IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GINGER ROSE JONES,

    Plaintiff,

v.

WELLS FARGO BANK, N.A. and
JOHNSON & FREEDMAN, LLC,

    Defendants.

CIVIL ACTION NO.
1:12-CV-01156-TWT-LTW

## MAGISTRATE JUDGE'S ORDER AND REPORT AND RECOMMENDATION

Pending before this Court are Plaintiff Ginger Rose Jones' ("Plaintiff" or "Jones") Motion for Partial Summary Judgment (Doc. 25), Defendants Wells Fargo Bank, N.A. and Johnson & Freedman, LLC's (collectively "Defendants") Motion for Leave to Amend Answer (Doc. 34), and Defendants' Motion for Summary Judgment (Doc. 37). For the reasons set forth below, the undersigned **RECOMMENDS** that Plaintiff's Motion for Partial Summary Judgment be **GRANTED** and that Defendants' Motion for Summary Judgment be **DENIED**. Docket Entries [25, 37]. Additionally, Defendants' Motion for Leave to Amend Answer is **DENIED**. Docket Entry [34].

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Jones and former Plaintiff Terry Cyrus ("Cyrus") filed the instant lawsuit on April 4, 2012. Therein, Jones and Cyrus alleged that Defendants' foreclosure sale of their home and Defendants' subsequent eviction proceedings after Plaintiff Jones

filed for bankruptcy violated the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362. Second, Plaintiffs contend that the dispossessory action was filed in derogation of the automatic stay and violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(6)(F). Defendants moved to dismiss Plaintiffs' Complaint on May 3, 2012. The District Court, adopted this Court's Report and Recommendation dismissing Plaintiff Jones and Cyrus' FDCPA claim. The District Court also agreed with this Court that Plaintiff Cyrus's claim that Defendants violated the automatic stay should be dismissed because Plaintiff Cyrus had not sought bankruptcy protection. The District Court also adopted this Court's recommendation to deny the Motion as to Jones' claim for the violation of the automatic stay.

In Plaintiff Jones' Motion for Partial Summary Judgment, Jones argues that the Court should reconsider its dismissal of Cyrus's claim for violation of the stay because Cyrus was a co-debtor and co-debtors are protected by an automatic stay even if they do not themselves move for bankruptcy protection. Additionally, Jones contends that she is entitled to summary judgment on the issue of whether the bankruptcy court's refusal to annul the automatic stay has preclusive effect in this litigation and whether the foreclosure of Plaintiffs' home one day after Jones filed her bankruptcy petition violated the stay. Defendants argue in response that the bankruptcy court's order denying Wells Fargo's request for annulment of the stay does not have preclusive effect because it was not a final decision on the merits of the annulment of the stay. Defendants further argue that the stay should be annulled because Plaintiffs have abused the bankruptcy system

2

in bad faith in order to avoid foreclosure.

## I.  **FACTUAL BACKGROUND**[1]

On June 13, 2006, Cyrus executed a Note and Security Deed conveying a first priority security interest in a home in Winston, Georgia.  (DSAF ¶ 11; DSMF ¶ 11; Def.'s Ex. A, p. 1).  Cyrus, who has been living in the home for free since 2007, could not afford to make her $2,500 monthly payments.  (Doc. 4-2, p. 34; DSAF ¶¶ 30-31; DSMF ¶¶ 29-30).  Plaintiff Ginger Jones also lives in the home with Cyrus.  (DSAF ¶ 32; DSMF ¶ 31).  On November 7, 2006, Cyrus filed for bankruptcy (Case No. 06-74472), but her bankruptcy case was dismissed on January 3, 2007,  for failure to pay the filing fee.  (DSAF ¶ 21; DSMF ¶ 20).  Cyrus also filed for bankruptcy on July 1, 2009, September 14, 2010, and November 8, 2010, but each time, Cyrus' case was dismissed.  (DSAF ¶¶ 22-25; DSMF ¶¶ 21-24).

---

[1] All facts taken directly from the Plaintiff's Statement of Undisputed Material Facts (Doc. )(hereinafter "PSMF"), Defendants' Statement of Additional Material Facts ("DSAF") (Doc. 30-1), and Defendants' Statement of Material Facts ("DSMF") (Doc. 37-2) remain undisputed.  This Court must accept as admitted those facts in the moving party's statement that have not been specifically controverted with citation to the relevant portions of the record by the opposing party.  LR 56.1B.2(2), (3), NDGa. Subjective perceptions, conclusory allegations, or allegations that are otherwise unsupported by record evidence do not create genuine issues of material fact in order to withstand summary judgment.  See Chapman v. AI Transp., 229 F.3d 1012, 1051 n.34 (11th Cir. 2000) (en banc); Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997); Carter v. City of Miami, 870 F.2d 578, 585 (11th Cir. 1989).  Thus, this Court will not consider any fact (1) not supported by citation to evidence (including a page or paragraph number); or (2) stated as an issue or legal conclusion.

3

**A.**   **Cyrus Transferred Her Interest in the Property to Jones on April 20, 2010**

On April 20, 2010, Cyrus, without obtaining prior permission from Wells Fargo, conveyed one-half of her interest in the property via quit claim deed to Jones. (PSMF ¶ 7; DSAF ¶ 40; DSMF ¶ 39). The first page of the quit claim deed shows that the quit claim deed was filed in the Douglas County Superior Court on April 29, 2010. (PSMF ¶ 7; DSAF ¶ 12; DSMF ¶ 12; Def.'s Ex. B). The second page of the quit claim deed indicates that the quit claim deed was recorded on May 7, 2010. (Def.'s Ex. B; DSAF ¶ 12; DSMF ¶ 12). Cyrus did not receive any money from Jones, who was unemployed, in exchange for her conveyance of a one-half interest in the property to Jones. (DSAF ¶¶ 33-34; DSMF ¶¶ 32, 34). Jones owed no money in connection with the property. (DSAF ¶ 38; DSMF ¶ 37).

**B.**   **Jones Filed for Bankruptcy on May 3, 2010**

Jones filed for bankruptcy (Case No. 10-73110) on May 3, 2010, but did not pay her filing fee for the action or pay the Trustee any money. (PSMF ¶ 5; DSAF ¶ 3; DSMF ¶ 3). At the time Jones filed for bankruptcy, Jones had no source of income and was unemployed. (DSAF ¶ 34, 35; DSMF ¶ 33, 34). Nevertheless, Jones indicated on her bankruptcy petition that she received $2,000 per month from a job. (Def.'s Ex. C, Doc. 30-1, pp. 6, 45, 48, 53). On June 24, 2010, the bankruptcy court dismissed Jones' case due to her failure to pay the filing fees. (Pl.'s Ex. A). Jones also filed for bankruptcy on November 8, 2010, but her case was dismissed on February 11, 2011, for

4

her failure to fund the plan. (DSAF ¶ 26: DSMF ¶ 25`). Jones never paid the filing fee for the action. (DSAF ¶ 28; DSMF ¶ 27).

### C.    A Foreclosure Sale of the Property Took Place on May 4, 2010

On May 4, 2010, the property was sold at foreclosure, where it was purchased by Wells Fargo for a high bid in the amount of $274,400. (Aff. of Carolee Berasi, hereinafter "Berasi Aff.," ¶ 9). In connection with the foreclosure proceedings, Johnson & Freedman performed two title searches on the property, but the quit claim deed was not of record. (Berasi Aff. ¶¶ 7-8). The Deed Under Power was recorded in the deed records of Douglas County on or about July 28, 2010. (Berasi Aff. ¶ 9). According to counsel for Wells Fargo, Johnson & Freedman's records do not reflect that Johnson & Freedman was notified prior to the foreclosure sale that Jones had filed for bankruptcy or that Cyrus had conveyed a one-half interest in the property. (Berasi Aff. ¶¶ 11, 12).

### D.    Wells Fargo Files a Dispossessory Action on May 19, 2010

On approximately May 19, 2010, Wells Fargo filed a dispossessory action in Dublin County Magistrate Court, and Cyrus was served with a dispossessory warrant on June 8, 2010, and on June 28, 2010, a dispossessory judgment was entered. (Doc. 4-2, p. 23, 25-26; Aff. Of Kyle Kotake, Doc. 25-5, ¶ 8).

### E.    Cyrus and Jones File Suit in Gwinnett County on February 18, 2011

Cyrus and Jones filed a Complaint in the Superior Court of Gwinnett County on February 18, 2011, against Defendant Wells Fargo, Mortgage Electronic Registration Systems, Inc., and Aegis Funding Corporation challenging Wells Fargo's foreclosure

5

sale of the property on the grounds that the Assignment of the Note and Security Deed was invalid, that Wells Fargo failed to comply with notice requirements under O.C.G.A. § 44-14-162.2, and that the foreclosure sale occurred in violation of the automatic stay. (Pl.'s Ex. C; Def.'s Ex. A, Doc. 30-1, p. 9).   In that case, the parties agreed that Plaintiffs' claims relating to violation of the bankruptcy stay should be deferred to this Court, where Plaintiffs had filed the same claim.  (Def.'s Ex. A, p. 3).   As for the remainder of Plaintiff's claims, the superior court granted summary judgment in the favor of Wells Fargo and MERS on August 21, 2012.  (Def.'s Ex. A).

### F.   **Wells Fargo Seeks Relief from the Automatic Stay on July 21, 2011**

On July 21, 2011, Wells Fargo filed a motion in the bankruptcy court to reopen the case, annul the automatic stay pursuant to 11 U.S.C. § 362(d)(4), validate the foreclosure sale, and declare the bankruptcy case void ab initio. (Doc. 4-2, p. 4; Pl.'s Ex. A, p. 2).  The bankruptcy court held a hearing over the matter on September 6, 2011. (Doc. 4-2).   During the hearing, the bankruptcy judge criticized Jones for filing a Chapter 13 bankruptcy when Jones did not have any regular income, and advised Jones that Chapter 13 bankruptcy is only for people who have income because it requires the debtor to pay money. (Doc. 4-2, p. 41).  The bankruptcy judge criticized Wells Fargo because Wells Fargo waited until more than a year after the bankruptcy case was closed to seek to annul the stay and did not mention the state court litigation in their efforts to do so. (Doc. 4-2, p. 40).   At the hearing, the bankruptcy judge had the following exchange with the parties:

6

The Court:        But it seems to me that with all of the other questions
                  raise, and I have read the complaint, it seems to me what
                  you would want would be a declaratory judgment by the
                  Court in Gwinnett County that you have the right to
                  foreclose.

Defense Counsel:  We will need that, Your Honor.

The Court:        And so I can't do anything for you, and I'm certainly not
                  going to validate a foreclosure more than a year ago that
                  you all knew took place and waited - - I don't know why
                  would wait until a year after the case was closed, and
                  then put in your motion - - not even mention this case to
                  me, which is the reason why you would file this motion.

                  I feel like I'm not being given full information, frankly,
                  by either side.  You can't live in a place for free, but you
                  can't ask the Court to enter orders on a situation where
                  you're not giving me full information.

                  And so I think this is sort of like an in peri delicto, just
                  leave everybody where they stand and let you go fight it
                  out in State Court.  On this record, I really don't know
                  what else to do.

Defense Counsel:  Well, Your Honor, I'm concerned that the State Court
                  Judge might  not rule on the State issue.

The Court:        You know, they know how to deal with it.  If it comes
                  down to that, and it may not, but if the State Court Judge
                  says, you know what, you've got the right chain of title,
                  you've got everything done, the only thing I don't
                  understand is what the Bankruptcy Court's position is.
                  Then come back to me.
                  . . .
                  But what I do know is that if you have a right to
                  foreclose, she's challenged it based on the paperwork.
                  You see this all the time.  You can't get me to bless it in
                  this back door way without telling me you've got that
                  litigation pending.  That really wasn't fair.

7

So, I think what you need to do, you go back there and you either get the Court to say you had the right, and if the only issue is the bankruptcy stay, then come back and see if that even makes sense. But if they say you have the right, I would start all over again.

. . .

And you asked me in your motion to declare relief without telling me that this case was pending, and that relief would have - - asked me to validate the sale in all respects. I find that very disturbing without telling me that this case was pending and showing me the complaint and showing me exactly what you were really trying to do.

So, I'm going to deny without prejudice to anyone's contentions with respect to whether Wells Fargo has the proper assignments and the proper authority to foreclose under Georgia law. Those are matters of state law. I am not deciding who owned the note, who held the deed. I have had no . . . proffer on any of that, and I certainly can't make any conclusions whether the parties complied with Section 44-14-162.

But I will say to Ms. Jones and to Ms. Cyrus, both of you are really admonished not to file another bankruptcy without paying a full filing fee, a plan, and putting your income into the case. . . . You just can't abuse the bankruptcy system.

But you can't either by giving me a motion that doesn't give me full information. So I'm going to leave you where I find you.

(Doc. 4-2, pp. 41-46).

On September 8, 2011, the bankruptcy court issued a written Order denying Wells Fargo's motion to reopen case, annul the automatic and co-debtor stay, validate foreclosure sale, and declare case void ab initio, or in the alternative for stay relief, on September 8, 2011. (Pl.'s Ex. A, Doc. 27). The bankruptcy judge explained:

8

> After considering the arguments by counsel, the testimony of Ms. Jones and Ms. Cyrus, and the failure of Wells Fargo to explain its delay in filing the motion to annul and validate the foreclosure and its failure to disclose the pending state court litigation in its motion and for the reasons stated on the record, the motion is denied. This denial is without prejudice to the parties' arguments in state court with respect to whether Wells Fargo had or has the proper assignments, whether Wells Fargo is the owner or holder of the note or security deed, whether Wells Fargo had or has the authority to foreclose under Georgia law, or whether Wells Fargo complied with O.C.G.A. § 44-14-162.2.

(Pl.'s Ex. A, p. 3).

## II.   **LEGAL ANALYSIS**

### A.   **Summary Judgment Standard**

A motion for summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of showing "that there are no genuine issues of material fact to be determined at trial." Mullins v. Crowell, 228 F.3d 1305, 1313 (11th Cir. 2000) (citing Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991)). The movant's initial burden consists of a "responsibility [to] inform . . . the . . . court of the basis for its motion, and [to] identify[ ] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). For issues on which the movant would

9

bear the burden of proof at trial:

> [The movant] must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.  In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party.

Fitzpatrick, 2 F.3d at 1115 (emphasis in original); see also Chanel, Inc. v. Italian Activewear of Fla., 931 F.2d 1472, 1477 (11th Cir. 1991) (explaining that when the "moving party is also the party with the burden of proof [,]. . . it is important to remember the non-moving party must produce its significant, probative evidence only after the movant has satisfied its burden of demonstrating there is no genuine dispute on any material fact" and there is "no genuine dispute only if a reasonable jury could not return a verdict for the non-moving party").

### B.   **Whether Cyrus was Protected by the Automatic Stay**

Plaintiff Jones and former Plaintiff Cyrus contend in their Complaint that Defendants disregarded the automatic stay in violation of 11 U.S.C. § 362(k) when they foreclosed on Plaintiffs' home and brought a dispossessory action against the Plaintiffs. Plaintiffs also contend that as a result, Defendants willfully and recklessly violated the stay and therefore, Plaintiffs were entitled to their reasonable attorneys' fees and actual damages in the amount of $250,000.  Plaintiff Jones contends that the Court should reconsider its earlier decision in connection with Defendants' Motion to Dismiss that former Plaintiff Cyrus had no standing to bring the automatic stay violation claim.  In

10

support, Jones contends that Cyrus was protected by the automatic stay in Jones'

bankruptcy case because Jones and Cyrus were co-debtors.

Jones essentially asks the Court to reconsider the former ruling with respect to

Cyrus.  A motion for reconsideration is appropriate only where there is: (1) newly

discovered evidence; (2) an intervening development or change in controlling law; or

(3) a need to correct a clear error of law or fact.  See Bryant v. Jones, 696 F. Supp. 2d

1313, 1320 (N.D. Ga. 2010); Jersawitz v. People TV, 71 F. Supp. 2d 1330, 1344 (N.D.

Ga. 1999).  A motion for reconsideration should not be used to present the Court with

arguments already heard and dismissed and the movant must set forth facts or law of a

strongly convincing nature to induce the court to reverse its prior decision.  Raiford v.

Nat'l Hills Exch., No. CV 111-152, 2014 WL 97359, at *1 (S.D. Ga. Jan. 8, 2014);

Bryan v. Murphy, 246 F. Supp. 2d 1256, 1259 (N.D. Ga. 2003).  In this case, Jones

presents no newly discovered evidence, intervening development or change in

controlling law, or clear error of law or fact.  Accordingly, Jones' request that the Court

reconsider its ruling with respect to the dismissal of Cyrus' claim for violation of

automatic stay should be **DENIED**.

    **C.**    **Whether the Bankruptcy Court's Order Denying Wells Fargo's Request to Annul the Automatic Stay Precludes Defendants' Argument in this Case that the Stay Should Be Annulled**

Jones argues the Bankruptcy Court's September 9, 2011 Order denying Wells

Fargo's request to annul the automatic stay and to enter an order declaring the case void

*ab initio* collaterally estops Defendants' from arguing in this case that the stay should

11

be annulled.   Defendants contend that collateral estoppel does not apply to the bankruptcy order because it was not a decision on the merits of the stay.  In support, Defendants cite to the bankruptcy judge's statements at the end of the hearing that the debtor did not pay the filing fee, that the law does not protect debtors who allow the bankruptcy to get dismissed quickly, that because both parties have not acted properly, that she would just leave them where they stood and let them fight it out in state court, and that "if the only issue is the bankruptcy stay, then come back and see if that even makes sense."

The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts.  See, e.g., Katchen v. Landy, 382 U.S. 323, 334 (1966); EDP Med. Computer Sys., Inc. v. United States, 480 F.3d 621, 624 (2d Cir. 2007); United States Dep't of Air Force v. Carolina Parachute Corp., 907 F.2d 1469, 1473-74 (4th Cir. 1990). "Collateral estoppel or issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit. There are several prerequisites to the application of collateral estoppel: (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding." CSX Transp., Inc. v. Bhd. of Maint. of Way Emps., 327 F.3d 1309, 1317 (11th Cir. 2003).

12

In this case, the issue of whether the automatic stay should be annulled is precluded because Wells Fargo's argument that the stay should be annulled was raised, fully litigated, considered, and rejected in the bankruptcy court. First, the issues in this litigation and in Jones' bankruptcy proceeding were identical and actually litigated in Jones' bankruptcy case. In Jones' bankruptcy proceeding, Defendant Wells Fargo, through its counsel Defendant Johnson & Freedman, LLC, argued as it has in this case, that the bankruptcy court should annul the automatic stay because the conveyance from Cyrus to Jones was a sham to avoid the pending foreclosure sale of Cyrus' residence. See In re Ginger Rose Jones, No. 10-73110-JB, Doc. 25 (N.D. Ga. July 21, 2011); Doc. 4-2, pp. 4, 9, 12, 15, 21-42). In support, Wells Fargo, like in the instant proceeding, argued that Jones failed to pay her filing fee, that Cyrus' conveyance of the property was for the purpose of preventing the foreclosure, that Cyrus had previously filed for bankruptcy four times since obtaining her loan and her petitions for bankruptcy were dismissed twice for failing to pay the filing fee and once for failing to fund the plan. (See generally, Doc. 4-2). Additionally, Wells Fargo, through its counsel at Johnson & Freedman, had the full opportunity to litigate the issue before the bankruptcy court. The bankruptcy court held a hearing over the matter and heard testimony of witnesses pertinent to the issue of whether Jones' petition abused the bankruptcy system and Wells Fargo's actions during the period of the stay. (Doc. 4-2, pp. 21-42).

Defendants challenge only the finality of the bankruptcy court's judgment and argue that there was no final decision for purposes of issue preclusion because the

13

bankruptcy court did not decide the issue of the validity of the automatic stay.  In support, Defendants point out that during the course of the hearing over the issue of whether to annul the stay, the bankruptcy judge accused Jones of not doing what she needed to do to prosecute her bankruptcy case, noted the stay "gets annulled when the debtor doesn't do anything," decided to "leave the parties where they stand," and stated that "if the only issue is with the bankruptcy stay, then come back and see if that even makes sense."

This Court concludes that the judgment by the bankruptcy judge was sufficiently firm to be a final judgment for purposes of issue preclusion.  The finality requirement for issue preclusion or collateral estoppel is less stringent than for claim preclusion. Christo v. Padgett, 223 F.3d 1324, 1339 (11th Cir. 2000), citing Restatement (Second) Judgments § 13 (1980) and 18 Charles Alan Wright et al., Federal Practice and Procedure § 4434 at 321 (1981 & Supp. 2000).  Issue preclusion does not require a judgment that ends the litigation and leaves nothing for the court to do but execute the judgment.  Moore's Federal Practice § 132.03.  For purposes of issue preclusion, final judgment includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.  RF Delaware, Inc. v. Pac. Keystone, 326 F.3d 1255, 1261 (11th Cir. 2003); Christo, 223 F.3d at 1339 n.47; Restatement (Second) Judgments § 13 (1982) (explaining that a judgment in one action which is "considered merely tentative in the very action in which it was rendered" does not have preclusive effect; the judgment must ordinarily be a firm and stable one, the

14

'last word' of the rendering court, a final judgment."); Restatement (Second) Judgments § 13 (1982) (explaining that the concept of finality for purposes of issue preclusion includes dispositions, though, not final in that sense, have nevertheless been fully litigated). In the context of issue preclusion, finality "may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." <u>Gresham Park Cmty. Org. v. Howell</u>, 652 F.2d 1227, (5th Cir. 1981), <u>overruled on other grounds</u>, <u>Wood v. Orange Cnty.</u>, 715 F.2d 1543, 1546 (11th Cir. 1983); Restatement (Second) Judgments § 13 (1982). Consideration of whether a decision is sufficiently firm includes whether the parties were fully heard. <u>RF Deleware</u>. 326 F.3d at 1261. Judgments that are tentative, provisional, contingent, or do not represent completion of all steps in the adjudication of the claim by the court will be lacking in finality. Restatement (Second) Judgments § 13 (1982). Moreover, where an issue or law or fact essential to the adjudication of the claim has been reserved for future determination, the judgment is not final. Restatement (Second) Judgments § 13 (1982).

In this case, however, it is clear that the bankruptcy judge considered Wells' Fargo's request to annul the automatic stay, but decided not to grant Wells Fargo's desired relief. During the bankruptcy judge's discussion of the denial of Wells Fargo's motion within her Order, the bankruptcy judge based her decision on the fact that Wells Fargo failed to explain its delay in filing the motion to annul and failure to disclose the pending state court litigation. (Pl.'s Ex. A, p. 2). Defendants contend that the

15

bankruptcy judge's decision was not final because she invited Wells Fargo to relitigate the issue of the stay if the state court refused to adjudicate the state claims.  Assuming the bankruptcy judges' statements during the hearing are interpreted to be an invitation to relitigate the issue, at this point, the bankruptcy judge's order should be considered sufficiently firm to be accorded conclusive effect.  First, even if the bankruptcy judge intimated that Wells Fargo could return to her court if the state court did not reach the state court issues because of the issues pending in the bankruptcy court, the contingency never occurred.  The state court decided all of the state court issues which were not abandoned by Plaintiffs.  See (Def.'s Ex. A, Doc. 30-1, Cyrus v. Wells Fargo Bank, No. 11-A-01533-4, (Gwinnett Cnty. Sup. Ct. Aug. 23, 2012)).  Additionally, more than two and a half years have passed since the bankruptcy judge issued her order and Wells Fargo never returned to the bankruptcy court to re-litigate the stay or appealed the bankruptcy judge's order.  Furthermore, Wells Fargo does not raise any change in its condition or change in the circumstances of the parties which gives rise to a new defense on Wells Fargo's behalf.  Under these circumstances, this Court concludes that the bankruptcy judge's order was sufficiently firm to give preclusive effect.  See Yancey v. Gray & End Assoc., No. 08-0741, 2009 WL 772800, at *1 (E.D. Wis. Mar. 23, 2009) (concluding that debtor was collaterally estopped from attempting to undo bankruptcy court's order annulling automatic stay because to do so would be relitigating an issue that had been previously determined against her in a prior action); In re Saunds, No. 05 CIV. 5725(RPP), 2006 WL 1547883, at *3 (S.D.N.Y. June 7, 2006) (holding that order

denying relief from a stay was a final order and had preclusive effect); <u>Merrill Lynch Credit Corp. v. King</u>, 255 B.R. 388, 392 (D. Virgin Islands 2000) (holding that the Virgin Islands District Court did not have the authority to annul an automatic stay in a Chapter 11 proceeding filed in the Virginia bankruptcy court and was instead bound by the rulings of the Virginia bankruptcy judge), <u>aff'd</u> 281 F.3d 222 (3d Cir. 2001); <u>In re Edwards</u>, 222 B.R. 527, 528 (Bankr. E.D. Va. 1998) (concluding that debtor was estopped from collaterally attacking a consent order that provided prospective relief from stay because debtor consented to order, did not appeal, and the consent order was valid); <u>In re Abdul-Hasan</u>, 104 B.R. 263, 266-67 (Bankr. C.D. Cal. 1989) (reasoning that because the debtor did not appeal the ruling of the bankruptcy judge granting relief from a stay and took no action for months, she was collaterally estopped from attacking the ruling in another court); <u>cf.</u> <u>In re Thomas</u>, 191 F.3d 453 (6th Cir. 1999) (concluding that where the debtor was a party to the earlier adversary proceeding and had an opportunity to litigate the automatic stay issue in that proceeding and the issue was ultimately decided against the debtor, collateral estoppel precluded the debtor from again challenging whether the foreclosure sale violated the automatic stay); <u>In re Chateaugay Corp.</u>, 880 F.2d 1509, 1511-12 (2d Cir. 1989) (orders denying relief from the automatic stay are final orders for purposes of appeal).

Defendants are essentially asking the Court to overrule the bankruptcy judge's decision not to annul the automatic stay. That is for the court of first instance to do and until the decision is reversed for error by orderly review, either by the bankruptcy court

17

or a higher court, the orders of the bankruptcy judge should be respected. <u>Celotex Corp.</u> <u>v. Edwards</u>, 514 U.S. 300, 312-13 (1995) (holding that it was not appropriate for a collateral court to reverse the bankruptcy court's decision to issue an injunction and that if dissatisfied with the bankruptcy court's ultimate decision, the creditor should have appealed to the district court and then the Eleventh Circuit); <u>In re Washington</u>, 468 B.R. 846 (Bankr. W.D. Mo. Dec. 1, 2011) (explaining that relief from stay in prior case had collateral estoppel effect because the debtor had the opportunity to challenge the order in the prior case but did not); <u>In re Blocker</u>, 411 B.R. 516 (Bankr. S.D. Ga. 2009) (enforcing pre-petition waiver of automatic stay in consent order because consent order was signed by the judge in prior case, was not appealed in the prior case, and became final); <u>In re Edwards</u>, 222 B.R. at 528 ("Since the Supreme Court's ruling in <u>Celotex</u> <u>Corp. v. Edwards</u>, 514 U.S. 300 (1995), courts are more likely to uphold the finality of bankruptcy court orders against latter collateral attack.").

Here, there are no changes in circumstances since the bankruptcy judge's ruling that would merit reexamining the bankruptcy judge's order anew. <u>See</u> Restatement (Second) Judgments § 13 (1982) (explaining that a judgment concluding an action is not deprived of finality for purposes of res judicata by reason of the fact that it grants or denies continuing relief and that such cases may be final when circumstances remain constant and are not affected by a material change of the circumstances after judgment). Accordingly, this Court finds that the bankruptcy court's order denying relief from the

18

stay has preclusive effect for Wells Fargo and those in privity with Wells Fargo.[2]

### D.   Whether the Foreclosure Sale and Dispossessory Action Violated the Automatic Stay

Plaintiff Jones further contends that she is entitled to summary judgment on the issue of whether the completion of the foreclosure sale and pursuit of a dispossessory

---

[2] Neither party challenges whether Johnson & Freedman, as Wells Fargo's counsel, had a full and fair opportunity to litigate the issue in the bankruptcy proceeding, when it was not a party to the proceeding. A court may apply nonparty preclusion if: (1) the nonparty agreed to be bound by the litigation of others; (2) a substantive legal relationship existed between the person to be bound and a party to the judgment; (3) the nonparty was adequately represented by someone who was a party to the suit; (4) the nonparty assumed control over the litigation in which the judgment was issued; (5) a party attempted to relitigate issues through a proxy; or (6) a statutory scheme foreclosed successive litigation by nonlitigants. Griswold v. Cnty. of Hillsborough, 598 F.3d 1289, 1292 (11th Cir. 2010). Courts have consistently concluded that the attorney client relationship establishes privity. Mendelson v. Southeast Mortg. of Ga., Inc., No. 1:11-CV-03155-TWT-GGB, 2012 WL 3582630, at *11 (N.D. Ga. July 26, 2012) (R&R adopted by Thrash, J.); Maid of Mist Corp. v. Alcatraz Media, LLC, No. 1:06-CV-0714-ODE, 2010 WL 1687810, at *15 (N.D. Ga. Apr. 26, 2010) (finding that attorney and client were privies because their interests were represented by client, who had the same interest); Pincus v. Law Offices of Erskine & Fleisher, No. 08-81357-CIV, 2010 WL 286790, at *2 n.1 (S.D. Fla. Jan. 19, 2010); see also Weinberger v. Tucker, 510 F.3d 486, 493 (4th Cir. 2007) ("Courts have held that the attorney-client relationship itself establishes privity."); Plotner v. AT & T Corp., 224 F.3d 1161, 1169 (10th Cir. 2000) (holding that law firm appearing by virtue of their activities as representative of client is in privity with client); Henry v. Farmer City State Bank, 808 F.2d 1228, 1235 n.6 (7th Cir. 1986) ("Even though the Bank was the only actual party to the state court mortgage foreclosure proceedings, the other defendants, as directors, officers, employees, and attorneys of the Bank, are in privity with the Bank for purposes of res judicata."); but see Kerner v. Superior Court, 141 Cal. Rptr. 3d 504, 537 (Cal. Dist. Ct. App. 2012) (finding no privity between attorney and client because attorney representing a client owes the client a duty of loyalty, is not a party, and does not share the client's legal rights and interests). Because neither party has directly raised the issue of whether the bankruptcy order has preclusive effect on Johnson & Freedman, however, this Court does not reach the issue.

action in the Magistrate Court of Douglas County violated the stay. (Pl.'s Ex. C).   In response, Defendants assert that the stay should be annulled.   As discussed above, however, the bankruptcy court's refusal to annul the automatic stay precludes Defendants' argument in this case.

This Court finds that the foreclosure sale and filing of the dispossessory actions violated the automatic stay.   Upon the filing of a bankruptcy petition, 11 U.S.C. § 362(a) imposes an automatic stay that bars actions to obtain possession or control over property of the estate.   Jacks v. Wells Fargo Bank, N.A. (In re Jacks), 642 F.3d 1323, 1328 (11th Cir. 2011); In re Robinson, No. 02-17467-WHD, 2006 WL 6593115, at *2 (Bankr. N.D. Ga. Oct. 12, 2006) ("The Debtor correctly asserts that, pursuant to Section 362, the automatic stay arose upon the filing of the Debtor's Chapter 13 petition . . . ."); In re Bush, No. 05-93104-WHD, 2005 WL 6487198, at *5 (Bankr. N.D. Ga. July 14, 2005) ("Section 362(a)(1) operates to stay any proceeding against the Debtor, which would include a dispossessory proceeding designed to evict the Debtor from the Property, and § 362(a)(2) prevents a party from enforcing any judgments, including a writ of possession, against the Debtor. See 11 U.S.C. § 362(a)(1); (a)(2).").   Section 362 protects the debtor by giving the debtor reprieve from creditors; stopping collection efforts, harassment, and foreclosure actions; and allowing the debtor to attempt a repayment or reorganization plan.   In re Jacks, 642 F.3d at 1328.   Section 362 also protects creditors by preventing a race for the debtor's assets and facilitating an orderly liquidation process.   Id. In general, the automatic stay arises on the filing of the debtor's

20

Chapter 13 petition and continues until the earliest of (1) the time the case is closed; (2) the time the case is dismissed; or (3) the time a discharge is granted. 11 U.S.C. § 362(a). A stay of an act against the property of the estate, such as a foreclosure on the debtor's residence, continues until such property is no longer property of the estate. 11 U.S.C. § 362(c)(1); In re Trusty, No. 06-15767ELF, 2007 WL 3274420, at *1 n.2 (Bankr. E.D. Pa. Nov. 5, 2007); In re Parks, No. 04-41299-MGD, 2005 WL 6491918, at *2 (Bankr. N.D. Ga. Feb. 4, 2005) (noting that the stay of an act against property of the estate, such as a foreclosure proceeding, continues until such property is no longer property of the estate). When a case is dismissed, property of the estate revests in the entity in which such property was vested immediately before the case commenced, and as a result is no longer considered property of the estate. See 11 U.S.C. § 349(b)(3); In re Trusty, 2007 WL 3274420, at *1 n.2; In re Parks, 2005 WL 6491918, at *2. Under 11 U.S.C. § 362(k)(1), any "individual injured by any willful violation of a stay shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages." Id.

When Jones filed her bankruptcy petition on May 3, 2010, the automatic stay went into effect. (PSMF ¶ 5; DSAF ¶ 3; DSMF ¶ 3); See In re Robinson, 2006 WL 6593115, at *2. The stay remained in effect until Jones' bankruptcy petition was dismissed on June 24, 2010, for Jones' failure to pay the filing fees. (Pl.'s Ex. A); 11 U.S.C. § 362(c)(1); In re Trusty, 2007 WL 3274420, at *1 n.2; In re Parks, 2005 WL 6491918, at *2. Thus, the foreclosure sale, which took place on May 4, 2010, and the

21

filing of the dispossessory action on May 19, 2010, each occurred during the duration of the automatic stay. (Berasi Aff. ¶ 9; Doc. 4-2, p. 23, 25-26; Kotake Aff. ¶ 8). Accordingly, these actions violated the automatic stay. See In re Dye, No. 06-71024-MHM, 2011 WL 4790778, at *1 n.3 (Bankr. N.D. Ga. Sept. 28, 2011) ("A foreclosure sale was conducted on the day that Debtor filed his bankruptcy petition in this case, but that sale was void as a violation of the automatic stay."); Ford v. A.C. Loftin (In re Ford), 296 B.R. 537, 543 (Bankr. N.D. Ga. 2003) ("The postpetition foreclosure sale that [was] conducted violated the automatic stay of § 362(a)."). Accordingly, this Court agrees with Plaintiff Jones that summary judgment should be **GRANTED** in her favor on the issue of whether or not the foreclosure sale and dispossessory action were in violation of the automatic stay. Docket Entry [25].

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In Defendants' Motion for Summary Judgment (Docket Entry 37), Defendants argue summary judgment should be granted in their favor because collateral estoppel does not apply to the September 9, 2011 bankruptcy court order denying their request for annulment of the stay and the automatic stay should be annulled. For the reasons explained above, however, this Court has already concluded that the Court is precluded from annulling the automatic stay or finding that the stay should be annulled. Accordingly, Defendants' Motion for Summary Judgment should be **DENIED**. Docket Entry [37].

22

## DEFENDANTS' MOTION TO AMEND ANSWER

In Defendants' Motion to Amend Answer, Defendants seek to amend their Answer in order to add the defenses of bad faith, fraud and abuse of the bankruptcy system and annulment of the automatic stay as well as to add a counterclaim for the affirmative relief of annulling the automatic stay. Jones argues Defendants' motion should be denied on the grounds that it is futile because the defenses are barred by the doctrine of collateral estoppel.

Pursuant to the Federal Rules of Civil Procedure, leave to amend a party's pleading shall be "freely given when justice so requires." Fed. R. Civ. P. 15(a). District courts have broad discretion to grant or deny leave to amend. Foman v. Davis, 371 U.S. 178, 182 (1962); Forbus v. Sears Roebuck & Co., 30 F.3d 1402, 1404-05 (11th Cir. 1994). In the absence of undue prejudice to the opposing party, undue delay, bad faith on the part of the movant, futility of the motion, or repeated failure to cure deficiencies by previous amendments, the motion should be routinely granted. Foman, 371 U.S. at 182; Equity Lifestyle Props., Inc. v. Fla. Mowing and Landscape, 556 F.3d 1232, 1241 (11th Cir. 2009); Forbus, 30 F.3d at 1404-05; Bartronics, Inc. v. Power–One, Inc., 245 F.R.D. 532, 535 (S.D. Ala. 2007) (citation omitted) (denying in part, as futile, defendant's motion for leave to amend answer and counterclaim to "add two new conclusory claims for relief"). In deciding whether the amendment would be futile, the court should be guided by the principles that govern consideration of a motion to dismiss. See Wyatt v. BellSouth, Inc., 176 F.R.D. 627, 630 (M.D. Ala. 1998). In this

23

case, amendment would be futile because as discussed above, Defendants' defenses and counterclaim are precluded by the doctrine of collateral estoppel.   Accordingly, Defendants' Motion is **DENIED**.  Docket Entry [34].

### CONCLUSION

For the reasons outlined above, the undersigned **RECOMMENDS** that Plaintiff's Motion for Partial Summary Judgment be **GRANTED** and that Defendant's Motion for Summary Judgment be **DENIED**.  Docket Entries [25, 37].  Additionally, Defendants' Motion for Leave to Amend Answer is **DENIED**.  Docket Entry [34].

**IT IS SO ORDERED AND REPORTED AND RECOMMENDED**, this _10_ day of February, 2014.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

24